363 So.2d 1156 (1978)
Charles O. KOVALESKI, Appellant,
v.
TALLAHASSEE TITLE COMPANY and Fred F. Womble, As Tax Collector, Appellees.
No. II-214.
District Court of Appeal of Florida, First District.
November 6, 1978.
*1157 Charles Friend, Tallahassee, for appellant.
Peter Guarisco; Harry H. Mitchell of Mitchell & Mitchell, Tallahassee, for appellees.
ERVIN, Judge.
Kovaleski appeals the dismissal of his complaint seeking damages from the Leon County Tax Collector and the Tallahassee Title Company due to their failure to set forth in an abstract an interest held by third persons in the property bought by him at a tax sale. Prior to the final order of dismissal, Kovaleski's complaint was twice dismissed, with leave to amend, for its failure to state a cause of action. In the court's second order of dismissal, it was stated that plaintiff must allege ultimate facts showing a right of reliance by him on the title search as well as his reliance. A third amended complaint was filed,[1] in turn attacked by additional motions to dismiss. Following a hearing on the motions, the court entered an order dismissing the amended complaint as amended, stating it had considered plaintiff's motion to amend the complaint ore tenus to allege that prior to the purchase of the tax deed by him, he was furnished an abstract by the tax collector or by the clerk of the circuit court and, having received such abstract prior to bidding on the property, he relied on the information shown within it when submitting the bid. The court's order concluded, "[T]he plaintiff had no right to rely on any act of the tax collector in furnishing the clerk of the circuit court with an abstract or a list of names of persons who had or might have an interest in the property involved, and being of such opinion the court concludes that there was no right to reliance *1158 which would create a cause of action in favor of the plaintiff and against either defendant."
We affirm the court's decision as to the tax collector but reverse as to Tallahassee Title. As to the former, there are no allegations in the complaint that the tax collector's negligence proximately caused the injury plaintiff suffered. It is clear that but for the negligent omission in the search prepared by the abstracter, the injury could not have occurred. Additionally, we think the rule stated in Slavin v. Kay, 108 So.2d 462 (Fla. 1958), applies. In Slavin, the court was faced with the question whether both an owner and a contractor were liable for injuries suffered by a third person resulting from their alleged negligence in the construction of a wash basin in the plaintiff's motel room. The court held that if the offending defect was latent and unknown to the owner, the contractor remained liable, even after the project was completed and accepted by the owner. However, the owner could not be held liable where the condition was one which was not discoverable by inspection. The holding in Slavin has been followed by a number of more recent decisions, e.g., Mai Kai, Inc. v. Colucci, 205 So.2d 291 (Fla. 1967); Forte Towers South, Inc. v. Hill York Sales Corp., 312 So.2d 512 (Fla.3d DCA 1975); Roman Spa, Inc. v. Lubell, 334 So.2d 298 (Fla. 1st DCA 1976); El Shorafa v. Ruprecht, 345 So.2d 763 (Fla. 4th DCA 1977). Here the offending omission from the abstract was no more discoverable by the tax collector than was the defective basin by the motel owner in Slavin. The injury which plaintiff alleges could not have been proximately caused by the actions of the tax collector in merely furnishing to him an abstract previously negligently prepared by the abstracter.
The allegations pertaining to the abstracter's liability, however, are altogether different. As we have observed, the allegations, both written and verbal, were that the plaintiff relied upon an abstract prepared by Tallahassee Title Company prior to his successful bid at a tax sale of the property, and that the abstracter had omitted a preexisting interest in the title to the property which caused injury to plaintiff.
The general rule is that an abstracter is liable in damages to his employer for injury resulting from his wrongful or negligent errors in preparing an abstract of title and from defects or omissions in the abstract which he prepared and furnished. Sickler v. Indian River Abstract and Guaranty Co., 142 Fla. 528, 195 So. 195 (1940). He is, however, only liable for losses incurred by a plaintiff who relies on the abstract. 1 Am.Jur.2d, Abstracts of Title, § 19 (1962). Moreover, the duty to his employer is to use such care and skill as are exercised by persons engaged in similar occupations and under like circumstances. 1 Fla.Jur.2d, Abstracts, § 4 (1977). The Sickler court also held that an abstracter does not render himself liable to every person who may be injured by reason of his negligence, rather liability exists only in favor of the person employing him or those in privity with him, hence there could be no remedy in tort against the abstracter, only in contract. 195 So. at 197.
While the rule as to an abstracter's liability in the absence of privity has not been expressly overruled by any subsequent decisions of the Florida Supreme Court, courts in many other states have held that where the abstracter knew at the time of the abstract's preparation that it was to be used by a third person who would depend upon it in a pecuniary transaction, the rule of liability will be extended to those who act in reliance upon the title shown by the abstract. 1 Am.Jur.2d, Abstracts of Title, § 16, p. 241 (1962). See cases collected under 34 A.L.R.3d 1122, 1132-1136 (1970). This exception is recognized in Restatement (Second) of Torts, § 552 (1977), which provides in part:
(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable *1159 reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(2) Except as stated in Subsection (3), [which pertains to the liability of one who is under a public duty to furnish such information] the liability stated in Subsection (1) is limited to loss suffered
(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
The comment to subsection (2), pertaining to persons for whose guidance the information is supplied, states:
Under this Section, ..., it is not necessary that the maker should have any particular person in mind as the intended, or even the probable, recipient of the information. In other words, it is not required that the person who is to become the plaintiff be identified or known to the defendant as an individual when the information is supplied. It is enough that the maker of the representation intends it to reach and influence either a particular person or persons, known to him, or a group or class of persons, distinct from the much larger class or might reasonably be expected sooner or later to have access to the information and foreseeably to take some action in reliance upon it. It is enough, likewise, that the maker of the representation knows that his recipient intends to transmit the information to a similar person, persons or group. It is sufficient, in other words, insofar as the plaintiff's identity is concerned, that the maker supplies the information for repetition to a certain group or class of persons and that the plaintiff proves to be one of them, even though the maker never had heard of him by name when the information was given. Restatement (Second) of Torts, § 552, Comment h (1977).
In what is perhaps the most comprehensive opinion of any in the country on the subject of an abstracter's liability in the absence of privity, the Michigan Supreme Court, in Williams v. Polgar, 391 Mich. 6, 215 N.W.2d 149 (1974), observed that six general court-created exceptions[2] have been grafted upon the common law requirement of strict contractual privity. Those exceptions are: (1) The abstracter's fraud or collusion. (2) The theory of third party beneficiary contracts. (3) The theory of forseeability of use by a third party. (4) The actual knowledge or notice of the third party. (5) The agent for disclosed or undisclosed principals contracting with an abstracter. (6) The reissuance or recertification of an abstract. 215 N.W.2d at 152-153. The opinion noted that of 36 jurisdictions which have addressed the question of the abstracter's liability, only seven retain a rule of strict contractual privity. Those seven states are Arizona, California, Florida, Illinois, Ohio, Texas and Wisconsin. After analyzing the opinions of the various jurisdictions, the court concluded that the plaintiff had presented a valid tort cause of action in the nature of negligent representation arising from contract for an abstracter's services in favor of a non-contracting damaged third party whose reliance on the abstract could be foreseen. 215 N.W.2d at 158.
Notwithstanding the impressive list of out-of-state authorities recognizing one or *1160 more exceptions to the rule of privity, were it not for the Supreme Court's decision in A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla. 1973), we would be compelled to follow the Sickler holding and affirm the order of the trial court dismissing the complaint against the abstracter. In Moyer, the court was asked by the Fifth Circuit Court of Appeals whether a general contractor could maintain an action against the supervising architect for damages proximately caused by the negligence of the architect in the absence of direct privity of contract. The court's opinion specifically mentioned Sickler's requirement of privity but nevertheless held a cause of action existed against the negligent architect in favor of the third party general contractor "who may foreseeably be injured or sustained an economic loss proximately caused by the negligent performance of the contractual duty of an architect, ... notwithstanding the absence of privity." 285 So.2d at 402. The court observed that privity was a theoretical device of the common law which "recognizes limitation of liability commensurate with the compensation for contractual acceptance of risk ... [and] [t]he sharpness of its contours blurs when brought into contact with modern concepts of tort liability." Id. at 399. Moreover, MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916)  a case permitting a cause of action in tort against an automobile manufacturer by a person injured by an alleged defective condition in the car, who had not contracted with the manufacturer  "is heralded not so much for its decision of the facts as for its precedential value: a case relaxing privity's strictures." Id. The MacPherson decision was recognized "as humane ... [and] `more in line with reason and justice.'" Id. Finally, Moyer quoted with approval a decision by the Second District Court of Appeal in Audlane Lbr. and Bldrs. Sup. v. D.E. Britt Associates, Inc., 168 So.2d 333 (Fla. 2d DCA 1964). Certain statements made in Audlane have particular relevancy here:

In our view the extent of appellee's duty may best be defined by reference to the foreseeability of injury consequent upon breach of that duty. The complaint alleged that appellee knew that the design and specifications it prepared would be resold to and used by various fabricators. To argue that it is absolutely free of liability for negligence to these known users or consumers of its work is to disregard the half century of development in negligence law popularly thought to have originated in MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050, L.R.A. 1916F, 696 (1916), and explicitly recognized in this state in Matthews v. Lawnlite Co., Fla. 1956, 88 So.2d 299. The allegations of the complaint bring appellant within the ambit of Britt Associates' duty and the court erred in its contrary determination. (Emphasis supplied.) 168 So.2d at 335.
We conclude, reasoning from Moyer and Audlane, there is no logical reason for distinguishing between an architect's duty to a person who sustains injury due to the architect's negligence, even though such person is not in privity with the architect, and an abstracter's duty to a plaintiff, who while not in privity, may be foreseeably injured as a result of the abstracter's negligence. We think a fair interpretation of Moyer is that so long as one may reasonably foresee that the plaintiff would sustain an economic loss proximately caused by the negligent performance of a contractual duty of the abstracter, the plaintiff may bring an action in tort against the alleged negligent abstracter, notwithstanding the absence of privity.[3]
*1161 Under the circumstances of this case, it is immaterial whether the abstracter had specific knowledge of the identity of the plaintiff at the time it prepared the abstract. Nor does it matter whether the plaintiff was the holder of the tax certificate who applied for the deed.[4] The facts alleged that the abstract was used by the tax collector, as required by Section 197.241(2), Florida Statutes (1977), for the purpose of delivering to the clerk of the circuit court a statement certifying the names and addresses of all persons whom the clerk was required by law to notify prior to the sale of the property. The abstracter certainly knew that its preparation of the title search was not for the benefit only of the tax collector with whom it contracted or of any tax certificate holders, but either knew or should have known that the law permitted the property upon which the title search was prepared to be sold for cash to the highest bidder at public auction. Section 197.266. It was therefore foreseeable that the person who successfully bid the property would rely upon the abstract in making his bid, and that any negligent omission of a preexisting interest from the abstract could cause injury to such person. We consider plaintiff's complaint, as finally amended, stated a cause of action.
The order of dismissal, insofar as it affected the tax collector, is AFFIRMED, and REVERSED as to Tallahassee Title Company and remanded for further proceedings consistent with this opinion.
MILLS, Acting C.J., concurs.
MELVIN, J., dissents.
MELVIN, Judge, dissenting.
I do not agree that the complaint states a cause of action in favor of the plaintiff and against the defendant abstract company. It is alleged that the abstract company, in an abstract furnished by it to the Tax Collector of Leon County, failed to include the name of some person who had an interest in the subject realty. The plaintiff was in no way in privity with the relationship between the Tax Collector of Leon County and the contractor. He simply was the successful bidder at the tax sale, and now complains for damages because of a sour title that he obtained at the sale. It is my view that the opinion of the Supreme Court of Florida in the case of Sickler v. Indian River Abstract & Guaranty Co., 142 Fla. 528, 195 So. 195 (1940), completely disposes of this question contrary to the position of the plaintiff.
The majority in its opinion analyzes many cases of many courts and finds that the philosophies expressed therein are in harmony with what is considered to be the more modern view relating to liability in cases such as that before the court. The majority concludes that the Supreme Court of Florida in A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (1973), has reversed Sickler v. Indian River Abstract & Guaranty Co.
It is my view that Moyer does not reverse Sickler. I perceive that Moyer should be read in the light of the question certified to it by the United States Court of Appeals, Fifth Circuit. The case referred to related to an alleged cause of action against an architect for errors in the preparation, design, plans and specifications concerning the construction of a building. The Supreme Court in Moyer dealt with the questions thus presented. I nowhere find the writings of the court in Moyer to depart from its earlier ruling in Sickler, or any implied permission for any District Court of Appeal or Circuit Court to use Moyer as a convenient vehicle for overruling Sickler. This court in Chelsea Title & Guar. Co. v. Louis Briggs Const., Inc., 315 So.2d 229 (1975), *1162 specifically noted the contention that Moyer had overruled the doctrine set forth in Sickler and then specifically noted the differences in the fact-situations in the two cases. The United States Court of Appeals, Fifth Circuit, in the later case of Nortek, Inc. v. Alexander Grant & Co., 532 F.2d 1013 (1976), at 1015, specifically cautioned that the ruling of the Supreme Court of Florida in the Moyer case "may be limited to the architect-general contractor situation" that was involved in the Moyer case. The court continued in its analysis to point out, "The court did not specifically overrule Buchman and relied on the architect's direct supervision and control to find a cause of action. 286 (285) So.2d at 399." (emphasis supplied)
If the pronouncements of the Supreme Court of Florida in the Sickler case above referred to are no longer in harmony with the modern philosophy of the law, I then perceive the Supreme Court of Florida in due season will so declare.
I respectfully dissent from that portion of the majority opinion that recognizes existence of a cause of action against the title company.
NOTES
[1] Which generally alleged that plaintiff relied upon the abstracter's skill in making an accurate abstract for the purpose of showing that the abstract was used as evidence of title; that the abstract was a public record and was made available to him by the tax collector or by the clerk of the court, the cost of which plaintiff paid or agreed to pay the tax collector; that the abstract was used by the tax collector to prepare the statement certifying the names and addresses of all persons whom the clerk of circuit court was required by statute to notify of the scheduled tax sale of the property; that the abstracter was in the business of preparing abstracts for examination by persons who rely upon abstracts; that the plaintiff desired to know the status of the title to the property before deciding whether to purchase it or how much to bid for it and that the abstract induced the plaintiff to purchase the property; that the plaintiff would not have purchased the property if he had known of the preexisting interest which certain third persons had in the property; that the plaintiff relied on the tax collector's skill in making or obtaining an accurate abstract for the purpose of obtaining property on which appellant successfully bid.
[2] An additional exception, created by statute, places liability upon the abstracter by the usual requirement that the abstracter give a bond as a security condition for payment for all damages which may accrue to any party resulting from errors in the abstract. E.g., Ark.Stats. Ann. 71-106; Colo.Rev.Stats. 1963 Chpt. 1-1-5; Idaho Code § 54-101; Kan. Stat. Ann. 58-2802; Minn. Stat. Ann. § 386.66; Mont.Rev.Code § 66-2113; Rev.Stat.Neb. § 76-501; Nev.Rev.Stats. Title 19, § 240.330; New Mex.Stat.Ann. § 70-2-6; N.D. Cent. Code § 43-01-11; Okla. Stat. Ann. Title 1 § 1; Oreg.Rev.Stats. § 30.750; SDCL § 36-13-15; Utah Code Ann. § 1-1-12; Wyo. Stat. § 33-12.
[3] We think the Moyer rule then is consistent with that stated in Polgar and § 552, Restatement (Second) of Torts, permitting a cause of action by a non-contracting damaged third party whose reliance on the information could be foreseen. Our interpretation of the Moyer decision is in no way conflicting with our prior opinion in Chelsea Title and Guaranty Co. v. Louis Briggs Const., Inc., 315 So.2d 229 (Fla. 1st DCA 1975), where we declined to decide whether Moyer overruled the requirement of privity with an abstracter since the facts in Chelsea reflected privity.
[4] An affidavit, attached to a motion to dismiss, filed by the tax collector, stated not only that plaintiff was not the holder of the tax certificate who applied for the tax deed but, contrary to plaintiff's allegations, stated it was not until some seven months following plaintiff's successful bid at the sale that plaintiff first requested the tax collector's office to furnish him with a copy of the title search on the property sold to him. If the title company can satisfactorily establish such controverted facts later during the proceeding, it may ultimately prevail. It is obvious however that it is improper to consider the affidavit's statements when considering the propriety of a motion to dismiss.