772 P.2d 720

**IDAHO BANK & TRUST CO., a banking corporation, Plaintiff–Appellant,**

v.

**FIRST BANCORP OF IDAHO, an Idaho corporation, Defendant,**

and

**KMG Main Hurdman, a partnership, Defendant–Respondent.**

No. 17101.

Supreme Court of Idaho.

April 26, 1989.

Green, Service, Gasser & Kerl, Pocatello, for appellant. Steven V. Richert argued.

Elam, Burke & Boyd, Boise, and Berman & O'Rorke, Salt Lake City, Utah, for respondent. Daniel L. Berman argued.

SHEPARD, Chief Justice.

This case presents the question of the liability of a certified public accounting firm to a person not a party to the auditing contract. Main Hurdman contracted with First Bank & Trust to examine and give an opinion on the financial statements of First Bank & Trust. That audit was completed and an opinion provided to First Bank & Trust. At a later time, as a result of a buy out, Bancorp gained control over First Bank & Trust. In connection with that transaction, Bancorp obtained a loan from Idaho Bank & Trust. In connection with that loan, Bancorp provided Idaho Bank & Trust with the aforesaid audit report prepared by Main Hurdman.

Thereafter, First Bank & Trust was placed in receivership, and Bancorp defaulted upon its loan payments to Idaho Bank & Trust. The present action was brought by Idaho Bank & Trust against Bancorp and Main Hurdman. Upon motion, Main Hurdman was dismissed as a party, that order of dismissal was certified for appeal, and the only matter before this Court is the liability, if any, of Main Hurdman to Idaho Bank & Trust.

The decision of the district court may be viewed as presenting other bases for its decision, but nevertheless, the issue here is stated by the appellant as "[s]hould an independent accountant, who certifies an audit of an entity, be liable to those who detrimentally rely upon the audit?" Thus, we are presented with a question which falls within a classic pattern, and presents the question originally treated in *Ultramares Corp. v. Touche*, 255 N.Y. 170, 174 N.E. 441 (1931). In *Ultramares* a certified public accountant examined and audited the financial statements of a customer, and failed to discover that an account receivable exhibited on those statements was non-existent. The certified statements indicated the customer's net worth of over one million dollars, when in fact the customer was insolvent. The plaintiff, relying on that statement, loaned money to the firm. The firm later filed for bankruptcy. The New York court refused to hold the auditor liable to all persons who foreseeably would rely on the negligently audited financial statements, reasoning:

> If liability for negligence exists, a thoughtless slip or blunder, the failure to detect a theft or forgery beneath the cover of deceptive entries, may expose accountants to a liability in an indeterminate amount for an indeterminate time to an indeterminate class. The hazards of the business conducted on these terms are so extreme as to enkindle doubt whether a flaw may nor exist in the implication of a duty that exposes to these consequences.

*Id.* at 179–180, 174 N.E. at 444. The rule as stated in *Ultramares*, has been applied by other courts. *Gordon v. Etue, Wardlaw and Co., P.A.*, 511 So.2d 384 (Fla.App. 1987); *Dworman v. Lee*, 83 A.D.2d 507, 441 N.Y.S.2d 90 (N.Y.A.D.1981); *Nortek, Inc. v. Alexander Grant and Co.*, 532 F.2d 1013 (5th Cir.1976); *Shofstall v. Allied*

*Van Lines, Inc.,* 455 F.Supp. 351 (N.D.Ill. 1978).

Other jurisdictions have departed from the doctrine of *Ultramares,* holding that public accountants may be liable to third parties, not always precisely identifiable, but who belong to a limited class of persons whose reliance on the accountant's representations is specifically foreseen. *Raritan River Steel Co. v. Cherry, Bekaert and Holland,* 322 N.C. 200, 367 S.E.2d 609 (1988); *Pahre v. Auditor of State,* 422 N.W.2d 178 (Iowa 1988); *Touche Ross and Co. v. Commercial Union Ins. Co.,* 514 So.2d 315 (Miss.1987); *BancOhio Nat. Bank v. Schiesswohl,* 33 Ohio App.3d 329, 515 N.E.2d 997 (1986); *H. Rosenblum, Inc. v. Adler,* 93 N.J. 324, 461 A.2d 138 (1983).

More recently the New York court, in *Credit Alliance v. Arthur Andersen & Co.,* 65 N.Y.2d 536, 493 N.Y.S.2d 435, 483 N.E.2d 110 (1985), has reaffirmed the basic principles articulated in *Ultramares,* but has interpreted the *Ultramares* doctrine to include noncontractual parties when certain other prerequisites are satisfied, *i.e.,*

1. the accountants must ahve been aware that the financial reports were to be used for a particular purpose or purposes;

2. in the furtherance of which a known party or parties was intended to rely; and

3. there must have been some conduct on the part of the accountants linking them to that party or parties, which evinces the accountants' understanding of that party or par- _ ›s' reliance.

*Credit Alliance v. Arthur Anderson & Co., id.* 493 N.Y.S.2d at 443, 483 N.E.2d at 118.

Hence, the New York court has expanded its traditional rule set forth in *Ultramares.* We agree and adopt the extension of the traditional rule as expounded in *Credit Alliance.*

Plaintiff urges this Court to adopt the imposition of liability in accordance with the *Restatement* and *Restatement (Second) of Torts.* Section 552 of the *Restatement (Second) of Torts* limits the liability

of a professional who has made a negligent misrepresentation for loss suffered:

(2)a. by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

b. through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

When applied to an audit, the *Restatement* thus limits the person or persons to whom the auditor owes a duty to intended identifiable beneficiaries and to any unidentified member of the intended class of beneficiaries. *Rosenblum v. Adler,* 93 N.J. 324, 461 A.2d 138 (1983). We decline to adopt the *Restatement* standard. *See* Fiflis, *Current Problems of Accountants' Responsibilities to Third Parties,* 28 Vanderbilt L.Rev. 31 (1975). *See also Privity?— An Obsolete Approach to the Liability of Accountants to Third Parties,* 7 Seton Hall L.Rev. 507 (1976).

Insofar as we have been advised by the parties, the instant case is one of first impression before this Court. Hence, in the instant case the district court was not aware of the standards which would be applied by this Court in a case of accounting malpractice, *i.e.,* the previous set forth standards of *Credit Alliance.* Hence, we remand to the district court to apply the standards of *Credit Alliance,* and in its discretion permit the submission of additional facts necessary to such complication.

The cause is remanded to the district court. No costs allowed.

BAKES, BISTLINE, HUNTLEY and JOHNSON, JJ. concur.